STEVE YOUNG,

          Plaintiff,

      v.

AL CORTUNE, ANTHONY
DESIDERIO, DAVE SIEROTOWICZ,
AND JOHN DOES 1-10 IN THEIR
INDIVIDUAL AND OFFICIAL
CAPACITIES,

          Defendants.

Civil No. 17-329 (NLH/KMW)

**OPINION**

**APPEARANCES**:

ALLAN E. RICHARDSON
JACQUELINE M. VIGILANTE
THE VIGILANTE LAW FIRM
99 NORTH MAIN STREET
MULLICA HILL, NJ 08062

    *Attorney for Plaintiff Steve Young.*

MATTHEW JON LYNCH
MICHAEL EZRA VOMACKA
STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY GENERAL
DIVISION OF LAW
25 MARKET STREET
P.O. BOX 112
TRENTON, NJ 08625

    *Attorneys for Defendants Al Cortune, Anthony Desiderio,*
*Dave Sierotowicz.*

**HILLMAN, District Judge**

This is a 42 U.S.C. § 1983 and New Jersey Civil Rights Act ("NJCRA") case concerning First Amendment, First Amendment retaliation, false arrest, and false imprisonment claims arising from an incident at the New Jersey State House. Presently before the Court is Defendants' Motion for Summary Judgment. For the reasons expressed below, this Court will grant Defendants' Motion for Summary Judgment and dismiss this action.

## BACKGROUND

This Court takes its facts from the statements of material facts presented by the parties. This Court will note disagreement where relevant. Plaintiff Steven Young is the president and founder of the South Jersey chapter of the National Action Network ("NAN"). On March 10, 2016, Plaintiff attended a hearing (the "Hearing") held by the State Senate Budget and Appropriations Committee (the "Committee") on the topic of the potential takeover of Atlantic City by the State of New Jersey. The Committee was chaired by New Jersey State Senator Teresa Ruiz. The Hearing was held in the State House Annex (the "SHA"). The SHA is open to the public, subject to some restrictions found in the New Jersey Senate's rules. Plaintiff signed up to speak during the public comment period at the Hearing.

At the Hearing, Defendant Al Cartine[1] served as a Sergeant-at-Arms,[2] Defendant Anthony Desiderio served as a New Jersey State Trooper, and Defendant David Sierotowicz served as New Jersey State Trooper and supervisor of the SHA complex security unit. In her opening remarks on the issue of the proposed takeover of Atlantic City in relation to the Municipal Stabilization and Recovery Act (the "Act"), Senator Ruiz both noted that many individuals had submitted testimony and that people must be mindful and respectful of differences in opinion.

Jim Walsh was the first individual to give testimony. Walsh raised concerns about the legislation, compared the takeover to that of Flint, Michigan, and argued the legislation would stifle democracy and democratic control in municipalities. The crowd applauded and Senator Ruiz asked the individuals present to refrain from applause or other overt noises. Walsh was told to finish his statement by Senator Ruiz approximately five minutes into his testimony and finished his testimony about two minutes later. Thereafter, Senator Stephen M. Sweeney provided statements in support of the legislation. Next, Bob

---

[1] The parties agree that Cartine was pled incorrectly as Cortune. The Court will refer to him in this Opinion by his proper name, Cartine.

[2] Plaintiff previously had provided testimony at a New Jersey legislative hearing and does not recall having contact with Cartine at the time. Besides this instance, it appears that Plaintiff had never before had contact with Cartine.

McDevitt testified in favor the legislation for approximately two minutes and fifteen seconds and was asked questions by various New Jersey State Senators.  Finally, the New Jersey State Senators discussed the bill.

Afterwards, Plaintiff was called to testify.  Plaintiff testified that they were at war, that the state government "stabbed us too many times," that Plaintiff's group knows "how to fight," and that if the state government thought "they would stab them in their back and take their money and nothing would happen, that was not going to happen."  (Defs.' SOMF ¶¶ 28-30.) After Plaintiff had spoken for approximately six minutes and thirty seconds, Senator Ruiz said "[t]hank you, Mr. Young." (Defs.' SOMF ¶ 31.)[3]  In response, Plaintiff stated he was not finished, and then stated "we don't have no justice, there won't be no peace, and you can take that any way you want to take it." (Defs.' SOMF ¶ 32.)

Senator Ruiz stated to Plaintiff that this was an emotional topic, reminded him "there was no room for disrespect," and asked him to wrap up his comments.  (Defs.' SOMF ¶ 33.) Plaintiff continued to speak, spoke over Senator Ruiz, and said

_____

[3] Section 22:2 of the Rules of the Senate of the State of New Jersey states: "Citizens present who wish to be heard on a matter under consideration by the committee shall
be afforded an opportunity to speak, subject to reasonable limitations as may be set by the chair."

he was not finished.[4]  Senator Ruiz called for a recess after
Plaintiff had testified for approximately seven minutes and
forty seconds.  As she was calling for a recess, Plaintiff
stated: "I'm not leaving.  So what's next?"

At his deposition, Sierotowicz did not recall what
Plaintiff said at the hearing, whether Plaintiff said anything
threatening, whether Plaintiff encouraged others to take action,
or whether anyone else in the Hearing made threats or threatened
to take action.  At some point, Desiderio showed up to the
Hearing because he was told things "started to get a little
hostile with the different speakers and the committee chair."
(Def's Resp. SOMF ¶ 11.)  Desiderio did not recall at his
deposition whether Plaintiff made any threats or used
threatening language, but remembered Plaintiff was loud because
he spoke into a microphone.  Desiderio did not believe
Plaintiff's language was offensive.  Cartine remembered that
Plaintiff was "unruly . . . screaming at the chair" during his
testimony, but could not recall the substance of Plaintiff's
statements when asked at his deposition.  (Pl.'s SOMF ¶ 17.)

---

[4] Plaintiff only admits he "continued to speak."  (Pl.'s SOMF ¶
34.)  But, the recording of the hearing clearly shows he (1)
continued to speak, (2) spoke over Senator Ruiz, and (3) said he
had not finished speaking.  This is not a disputed fact, as
Plaintiff does not point to anywhere in the record supporting
his view.

Following the call for a recess, Cartine went to get Sierotowicz and Desiderio (the "Troopers") and told Sierotowicz that Plaintiff had to leave. Sierotowicz told Plaintiff he had to leave. The Troopers escorted Plaintiff out of the Hearing. There is no evidence that Senator Ruiz specifically requested Cartine to involve the Troopers. Cartine does not recall receiving a verbal or non-verbal request from Senator Ruiz, or anyone else, to remove Plaintiff from the Hearing.[5] Sierotowicz believed that Senator Ruiz banging her gavel signaled her intention to have Plaintiff stop his testimony and leave the Hearing. Desiderio admits he received no verbal or non-verbal instructions to remove Plaintiff from the Hearing.

Outside of the hearing room, Plaintiff spoke with the Troopers. Sierotowicz told Plaintiff that Cartine had asked for Plaintiff's removal from the Hearing. Sierotowicz decided Plaintiff could not re-enter the hearing room and told Plaintiff that once someone is removed, they could not re-enter. Either Desiderio or Sierotowicz told Plaintiff (1) he could not return to the hearing room and (2) he would be arrested if he returned to the hearing room. Plaintiff asked the Troopers why he could

---

[5] Defendants contest that this is not supported by the record. Although Cartine does not testify concerning whether a member of the Committee felt disrupted or threatened, he does testify that he does not recall receiving a signal to remove Plaintiff from a member of the Committee.

not return to the hearing room, who said he was not allowed to do so, and informed them they were violating his rights to freedom of speech and assembly. (Defs.' Mot. for Summ. J., Ex. A 102:14-104:3.)  Then he turned to go back into the hearing room[6] and he was arrested by Desiderio, handcuffed by the Troopers, and escorted to the entrance of the SHA.  Plaintiff did not re-enter the hearing room.

Afterwards, Plaintiff was brought to a police car, driven to a processing unit, and fingerprinted.  He waited for approximately one or two hours, was released, and told he would be sent a summons in the mail.  Plaintiff was charged under N.J. STAT. ANN. § 2C:29-1(a) (obstructing the administration of law or other governmental function) and N.J. STAT. ANN. § 2C:18-3(b) (trespass).  Defendants did not know what defiant trespass was at the time of Plaintiff's arrest.  These charges were later dismissed.  Since the Hearing, Plaintiff has observed another hearing and attended the vote on the Act.  Both were without incident.

After the Committee was reconvened, Senator Ruiz stated "that they had a lot of testimony and that she was not trying to hamper anyone's comments, but that she did have to stick to a

---

[6] Plaintiff appears to deny, without citation to the record, that he did not turn to go back into the hearing room.  His deposition testimony clearly shows, in his own words, that he did attempt to do so.  This is not a disputed fact.

timeframe." (Defs.' SOMF ¶ 50.) Senator Ruiz heard testimony from Don Guardian, the Mayor of Atlantic City, Keith Bennet, George Borrick, Linda Steele, a Mr. Abdul, and a Ms. Bawker with some supporting and others opposing the bill.

On January 17, 2017 Plaintiff filed this case. The Complaint contains four counts. These counts fall generally under the First and Fourth Amendment. Under Count I, Plaintiff alleges Defendants violated his First Amendment right to free speech and assembly. Under Count II, Plaintiff alleges Defendants violated his First Amendment right by arresting him in retaliation for his exercise of those rights. Under Count III, Plaintiff alleges Defendants violated his Fourth Amendment right by committing a false arrest and forcing his false imprisonment. These counts are all asserted under 42 U.S.C. § 1983. In Count IV,[7] Plaintiff alleges a violation of the same rights under the New Jersey Constitution by asserting a NJCRA claim.

Discovery ensued, culminating in Defendants' Motion for Summary Judgment filed on September 14, 2018. This was opposed by Plaintiff in November 2018 and Defendants' reply followed

---

[7] The Court notes for the record that the Complaint skips from Count III to Count V. Because this appears to be a typographical error, Count V in the Complaint will be referred to as Count IV by the Court.

shortly thereafter. Thus, Defendants' Motion for Summary
Judgment is fully briefed and ripe for adjudication.

<u>ANALYSIS</u>

**A.    Subject Matter Jurisdiction**

This Court has subject matter jurisdiction over this case
pursuant to 28 U.S.C. §§ 1332 and 1367.

**B.    Motion for Summary Judgment Standard**

Summary judgment is appropriate where the Court is
satisfied that "'the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits if any,' . . . demonstrate the absence of a genuine
issue of material fact" and that the moving party is entitled to
a judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477
U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such
that a reasonable jury could return a verdict in the nonmoving
party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,
248 (1986). A fact is "material" if, under the governing
substantive law, a dispute about the fact might affect the
outcome of the suit. <u>Id.</u> "In considering a motion for summary
judgment, a district court may not make credibility
determinations or engage in any weighing of the evidence;
instead, the non-moving party's evidence 'is to be believed and
all justifiable inferences are to be drawn in his favor.'"

<u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004) (citing <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); <u>see</u> <u>Singletary v. Pa. Dep't of Corr.</u>, 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing <u>Celotex</u>, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. <u>Celotex</u>, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'"

Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

C. **Motion for Summary Judgment**

Defendants present one overall issue for the Court to decide on their Motion for Summary Judgment: whether the doctrine of qualified immunity should be applied to them on all claims.[8] The doctrine of qualified immunity is meant to protect government officials from suit when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v.

---

[8] Considering that "federal and New Jersey law governing . . . alleged constitutional violations are substantially similar" this Court will analyze both under the federal standard. Middleton v. City of Ocean City, No. 12-0605 (RBK/JS), 2014 U.S. Dist. LEXIS 88368, at *18 n.4 (D.N.J. June 30, 2014). See, e.g., Hedges v. Musco, 204 F.3d 109, 121 (3d Cir. 2000). Thus, Plaintiff's NJCRA claim rises and falls with his federal claims.

Fitzgerald, 457 U.S. 800, 818 (1982)).  The Court is tasked with
balancing two interests: "the need to hold public officials
accountable when they exercise power irresponsibly and the need
to shield officials from harassment, distraction, and liability
when they perform their duties reasonably."  Id.

To determine whether a government official is entitled to
qualified immunity at the summary judgment stage, a court should
address two questions: (1) has the plaintiff alleged or shown a
violation of a constitutional right, and (2) is the right at
issue "clearly established" at the time of the defendant's
alleged misconduct?  Pearson, 555 U.S. at 236.  Courts are
"permitted to exercise their sound discretion in deciding which
of the two prongs of the qualified immunity analysis should be
addressed first."  Id.  The Court will address the prongs in
order for each claim.

> a. Whether Young's Ejection from the New Jersey State
> House Hearing Room was a Violation of the First
> Amendment

Defendants argue that there was no violation of Plaintiff's
First Amendment rights in removing him from the Hearing.
Defendants assert Plaintiff's behavior and the fact that the
Hearing was a limited public forum allowed them to remove him.
Plaintiff argues his removal was a violation of his First
Amendment rights because, among other things, Senator Ruiz did

not indicate to Defendants that Plaintiff must be removed and Plaintiff did not threaten anyone.

In cases concerning alleged First Amendment violations, the level of protection afforded by the First Amendment hinges on the classification of the forum. Galena v. Leone, 638 F.3d 186, 197 (3d Cir. 2011) ("When a First Amendment free speech challenge arises from a restriction on speech on government owned or controlled property . . . the classification of the forum determines the contours of the First Amendment rights that a court recognizes when reviewing the challenged governmental action."). There are three types of public forums: "(1) the traditional public forum; (2) the designated public forum; and (3) the limited public forum." Id.

A traditional public forum includes locations such as "public streets, parks, and other public areas traditionally devoted to assembly and debate." Id. at 198 (citing Ark. Educ. Television Comm'n v. Forbes, 523 U.S. 666, 677 (1998)). A "government entity creates a designated public forum when it intentionally designates property that traditionally has not been regarded as a public forum for use as a public forum." Id. (citing Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of Law v. Martinez, 561 U.S. 661, 679 n.11 (2010)). Finally, a "governmental entity creates a limited public forum when it provides for 'a forum that is limited to

use by certain groups or dedicated solely to the discussion of certain subjects.'" Id. (citing Pleasant Grove City v. Summum, 555 U.S. 460, 470 (2009)).

Here, the parties agree that the Hearing was a "limited public forum." The law supports that classification. See, e.g., id. at 199 (finding "Erie County Council meeting was a limited public forum" because "the meeting was held for the limited purpose of governing Erie County and discussing topics related to that governance"); Rowe v. City of Cocoa, 358 F.3d 800, 803 (11th Cir. 2004) (per curiam) ("As a limited public forum, a city council meeting is not open for endless public commentary speech but instead is simply a limited platform to discuss the topic at hand."). Here, the Hearing of the Committee in the SHA was limited to discussion of the Act. This Court agrees with the parties and finds this case involves a limited public forum.

If a space is a limited public forum, the "government . . . may restrict the time, place and manner of speech, as long as those restrictions are reasonable and serve the purpose for which the government created the limited public forum." Id. at 199 (citing Pleasant Grove City, 555 U.S. at 468-69). Additionally, "the governmental regulation of speech only need be viewpoint-neutral and 'reasonable in light of the purpose served by the forum.'" Id. at 198 (citing Good News Club v.

Milford Cent. Sch., 533 U.S. 98, 107 (2001)). "A time, place, and manner restriction on speech is reasonable if it is (1) content-neutral, (2) narrowly tailored to serve an important governmental interest, and (3) leaves open ample alternatives for communication of information." Id. at 199 (citing Ward v. Rock Against Racism, 491 U.S. 781, 791-803 (1989)). These are questions of fact. Id. at 202-03. There is, however "a First Amendment violation if the defendant applied the [time, place, and/or manner] restriction because of the speaker's viewpoint." Id. (citing Monteiro v. City of Elizabeth, 436 F.3d 397, 404 (3d Cir. 2006)).

The parties here agree (or at least Plaintiff does not contest): Plaintiff's removal was not based on the view he was expressing – opposition to the Act. Therefore, the question is not whether this was based on Plaintiff's viewpoint, but whether the removal was reasonable. Defendants cite two cases which they claim are analogous and thus show there has been no First Amendment violation: Galena and Eichenlaub v. Township of Indiana, 385 F.3d 274 (3d Cir. 2004). Defendants also distinguish this case from the most recent Third Circuit opinion on the subject in Barna v. Board of School Directors of the Panther Valley School District, 877 F.3d 136 (3d Cir. 2017), as the removal was temporary, not permanent. Because of the nature of the removal, the Court finds Barna is distinguishable from

this case and will not be considered.  Plaintiff argues these cases are all distinguishable and that a First Amendment violation occurred.  The Court will address <u>Galena</u> and <u>Eichenlaub</u> in turn.

### i. Whether **<u>Galena</u>** is Distinguishable

<u>Galena</u> concerned a meeting of the Erie County Council (the "ECC").  638 F.3d at 191.  The ECC had adopted an administrative code which gave the presiding officer the power to remove an individual if he or she is "boisterous or makes offensive, insulting, threatening, insolent, slanderous, or obscene remarks."  <u>Id.</u>  It also set an "order of business" for ECC meetings which allowed for a "Hearing of the Public" at the start of the meeting, after the Pledge of Allegiance, an optional prayer or invocation, and roll call.  <u>Id.</u>  This was the only time during which members of the public were permitted to address the ECC.  <u>Id.</u>

In the meeting – after the hearing of the public section of the meeting had concluded, a council member moved to have a proposed new ordinance skip the first reading and go directly to a second reading.  <u>Id.</u> at 193.  The plaintiff in that case stood up and stated he had an objection.  <u>Id.</u>  The presiding officer told plaintiff he was out of order, but plaintiff stated again that he had an objection.  <u>Id.</u>  The presiding officer again warned the plaintiff that he was out of order, and stated that

if he spoke up a third time, he would be removed.  Id.
Plaintiff again objected and the presiding officer ordered the
deputy officer present to remove the plaintiff.  Id.  All agreed
that the plaintiff's demeanor was calm and that his objection
was not "insulting, threatening, insolent, slanderous, or
obscene."  Id. at 195.

The Third Circuit discussed a multitude or procedural and
substantive issues.  But, of relevance to this case, the Third
Circuit held that regardless of whether the plaintiff "was
creating a disturbance" it was not a violation of the First
Amendment to enforce the administrative code of the ECC and
remove the plaintiff for voicing his objection at an
inappropriate time.  Id. at 212-13.  Moreover, the Third Circuit
opined that it is the "interruption of the order of business . .
. itself [that is] the disturbance" not the tone of voice or
demeanor of the speaker.  Id. at 212.

Although Galena is helpful in constructing the puzzle of
whether this amounts to a First Amendment violation, the Court
finds it is factually distinguishable and not directly
controlling.  Unlike in Galena, Defendants point to no rule that
would have allowed removal.  Plaintiff was speaking during his
allotted time.  The Court does note, however, that Plaintiff is
incorrect in pointing to the fact that there was no warning
here, no order from Senator Ruiz for removal, and that removal

17

technically occurred during a recess.  In this Court's

interpretation, the presence or absence of those facts had no

effect on the holding in <u>Galena</u> and should have no effect on

this case.

### ii. Whether <u>Eichenlaub</u> is Distinguishable

<u>Eichenlaub</u> presents a different set of facts from <u>Galena</u>,

but still resulted in the same outcome.  The Third Circuit

describes the factual background and its holding as follows:

> The record of the September 14, 1999 meeting
> discloses that [the plaintiff] <u>was repetitive and</u>
> <u>truculent, and that he repeatedly interrupted the</u>
> <u>chairman of the meeting.  Restricting such behavior is</u>
> <u>the sort of time, place, and manner regulation that</u>
> <u>passes muster under the most stringent scrutiny for a</u>
> <u>public forum.</u>  Indeed, for the presiding officer of a
> public meeting to allow a speaker to try to hijack the
> proceedings, or to filibuster them, would impinge on the
> First Amendment rights of other would-be participants.
> We have no difficulty sustaining the decision to remove
> David Eichenlaub on that basis.

> To be sure, the chairman of the meeting sought to
> restrict the discussion to topics of public interest and
> requested that David Eichenlaub not discuss matters of
> private concern.  To the extent those restrictions were
> not strictly content-neutral, the chairman's actions
> served the function of confining the discussion to the
> purpose of the meeting.  As we have observed, speech at
> a citizen's forum may be limited according to its
> germaneness to the purpose of the meeting.  At any rate,
> the overwhelming, and wholly sufficient, motive to eject
> David Eichenlaub from the meeting was the perfectly
> sustainable and content-neutral desire to prevent his
> badgering, constant interruptions, and disregard for the
> rules of decorum.

> We will affirm summary judgment for the defendants
> on this claim.

<u>Eichenlaub</u>, 385 F.3d at 281-82 (emphasis added).

Plaintiff argues this case is distinguishable because he did not use offensive language, was not threatened with removal by Senator Ruiz, did not receive a prior warning from Senator Ruiz, did not stray off topic, was not "repetitive and truculent," and was not disruptive. (Pl.'s Opp'n Br. 6.) But, the Eichenlaub court did not find offensive language was used, nor does it discuss whether a warning or threat of removal was given. The absence of discussion of these facts shows they were irrelevant to the Court's holding. Although in Eichenlaub the comments were not on topic, the Eichenlaub court specifically disavowed that as the basis for its holding, instead finding the disturbance he created was a "wholly sufficient" reason to remove the plaintiff there. Id. at 281.[9]

So, the sole relevant distinctions Plaintiff presents are that he was not "repetitive and truculent" and was not disruptive. Plaintiff was certainly repetitive, repeating the same point multiple times at the end of his testimony, and

---

[9] Plaintiff also argues that these cases are distinguishable because in the case law it was the presiding official, rather than security, which ordered removal of the disruptive individual. This is a distinction without a difference. Plaintiff has not pointed this Court to case law which would suggest a legislator be treated differently than a police officer when analyzing an alleged First Amendment violation. Instead, the First Amendment right is dependent upon the forum and the speech at issue. Moreover, Defendants who removed Plaintiff were physically present in the room and observed Plaintiff's behavior.

insisting that he was not finished with his statement. Eventually, this prompted Senator Ruiz to say: "Mr. Young, you've made your opinion very clear." It would also be fair to characterize Plaintiff as truculent. Plaintiff interrupted Senator Ruiz multiple times, refused to stop his testimony, and refused to leave. The Court finds there is no meaningful distinction between Eichenlaub and this case on this point.

More importantly, there is also no meaningful distinction as to whether Plaintiff was disruptive. The standard for whether an individual is disruptive or created a disturbance is low. As this Court stated supra, "[t]he interruption of the order of business is itself the disturbance." Galena, 638 F.3d at 212. Thus, a mere interruption in the order of business is in itself enough to allow removal. Plaintiff created a disturbance. He interrupted Senator Ruiz on multiple occasions while she was attempting to ask him to finish his statement and move on to the next speaker. When asked to finish up his comments, he refused. At the end of this statement, as Senator Ruiz states she is about to take a recess, Plaintiff can be heard saying "I'm not leaving." Plaintiff created a disturbance because his actions delayed Senator Ruiz's ability to call the next speaker and hear more testimony. This is sufficiently similar to the behavior in Eichenlaub to warrant a finding that it was permissible to remove Plaintiff from the hearing.

20

Plaintiff's First Amendment retaliation claim suffers a similar fate. For Plaintiff's retaliation claim to survive summary judgment, he must show: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Mirabella v. Villard, 853 F.3d 641, 649 (3d Cir. 2017) (quoting Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d Cir. 2006) (citation omitted)). As is discussed supra, because there was no First Amendment violation Plaintiff cannot show that he was engaged in constitutionally protected conduct. See Startzell v. City of Phila., No. 05-5287, 2007 U.S. Dist. 4082, at *39-40 (E.D. Pa. Jan. 18, 2007) (dismissing First Amendment retaliation claim on summary judgment for failure to show constitutionally protected conduct after deciding no First Amendment violation existed).

Accordingly, this Court will grant Defendants' Motion for Summary Judgment in this respect and dismiss all of Plaintiff's First Amendment claims.

    b. Whether Young's Arrest Violated the Fourth Amendment

Trooper Defendants[10] argue that Plaintiff's Fourth Amendment claims must be dismissed because probable cause existed to arrest and detain Plaintiff. Plaintiff argues there was no probable cause for his arrest on either of the charges. Thus, it appears the parties agree the sole question for this Court to determine is whether probable cause existed. As Trooper Defendants point out "[a] finding of probable cause is therefore a complete defense to [the Fourth Amendment] constitutional claims, and, accordingly would entitle [Trooper] Defendants to qualified immunity" on all Fourth Amendment claims. Goodwin v. Conway, 836 F.3d 321, 327 (3d Cir. 2016).

As the Third Circuit has stated:

> Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt. See United States v. Glasser, 750 F.2d 1197, 1205 (3d Cir. 1984). Rather, probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. United States v. Cruz, 910 F.2d 1072, 1076 (3d Cir. 1990) (citing Dunaway v. New York, 442 U.S. 200, 208 n.9 (1979)).

Orsatti v. N.J. State Police, 71 F.3d 480, 482-83 (3d Cir. 1995).

---

[10] As Cartine was not involved in the arrest of Plaintiff, it is only the Trooper Defendants that this claim has been asserted against.

There are two offenses which this Court must examine under the probable cause standard: defiant trespass, N.J. Stat. Ann. 2C:18-3(b)(1), and obstructing administration of law or other governmental function, N.J. Stat. Ann. 2C:29-1. The Court will determine as to each, in turn, whether Trooper Defendants had probable cause to arrest and detain Plaintiff.

### i. Whether Trooper Defendants Possessed Probable Cause to Arrest and Detain Plaintiff for Defiant Trespass

Defiant trespass is defined under New Jersey law as follows:

> A person commits a petty disorderly persons offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:
>
> (1) Actual communication to the actor; or

N.J. STAT. ANN. 2C:18-3(b)(1).

Trooper Defendants argue probable cause existed for Plaintiff's arrest under this New Jersey state statute. Plaintiff admits that he was put on notice by Trooper Defendants that he was no longer permitted to remain in or re-enter the Hearing. Plaintiff argues, however, that because he was not in the Hearing and did not ever re-enter the Hearing, there is no probable cause for defiant trespass.

Therefore, the sole issue for this Court is whether Trooper Defendants could only properly arrest Plaintiff for defiant trespass if he actually re-entered the Hearing rather than just

attempted to do so.  The Court notes Plaintiff cites no case law, but relies only on the plain text of the statute.  The Court cannot find there was probable cause here to arrest Plaintiff for defiant trespass.  The Court finds that defiant trespass requires, by its plain text, the individual to "enter or remain[]" in a place where he or she is not permitted.  Plaintiff was only put on notice that could not remain in the Hearing after he was removed and was in the hallway directly outside.  After he was removed, he neither re-entered the Hearing or "remained" in the Hearing.  Thus, the Court cannot find probable cause as to this offense.

Trooper Defendants' argument is unavailing.  None of the cases cited by Trooper Defendants concerns a situation where an individual attempted to re-enter a prohibited place but was arrested by police before he or she did so.  Trooper Defendants only cite cases where the individual re-entered or remained in a prohibited place.  Moreover, Trooper Defendants are incorrect that "failure to obey a police order can justify an arrest for defiant trespass."  (Defs.' Reply Br. 5.)  State v. Taylor does not support this proposition, as it was examining a violation of a Newark ordinance which forbid interference with a police officer engaging in the lawful discharge of his or her duty. 118 A.2d 36, 48-49 (N.J. Super. Ct. App. Div. 1955).  Tsitsoulis v. Township of Denville is also distinguishable, as it was clear

the plaintiff there had re-entered a prohibited place.  No.

2:07-4544, 2009 U.S. Dist. LEXIS 119369, at *2-8, 11-26 (D.N.J.

Dec. 23, 2009).[11]

Accordingly, this Court cannot grant Trooper Defendants

summary judgment on these grounds.

### ii. Whether Trooper Defendants Possessed Probable Cause to Arrest and Detain Plaintiff for Obstructing Administration of Law or Other Governmental Function

Obstructing administration of law or other governmental

function is defined as follows:

> A person commits an offense if he purposely obstructs,
> impairs or perverts the administration of law or other
> governmental function or prevents or attempts to prevent
> a public servant from lawfully performing an official
> function by means of flight, intimidation, force,
> violence, or physical interference or obstacle, or by
> means of any independently unlawful act.  This section
> does not apply to failure to perform a legal duty other
> than an official duty, or any other means of avoiding
> compliance with law without affirmative interference
> with governmental functions.

N.J. Stat. Ann. 2C:29-1.

Trooper Defendants argue there was probable cause and

points to State v. Hernandez, 768 A.2d 1062 (N.J. Super. Ct.

App. Div. 2001).  Plaintiff argues there is no probable cause as

he did not obstruct, impair, or pervert the administration of

---

[11] The quote pulled by Trooper Defendants is presented out of
context, as the argument over obeying police orders is whether
or not the plaintiff had actually been prohibited from being on
school grounds.  This separate argument is also unavailing.

justice nor did he prevent or attempt to prevent a public servant from performing his duties through "flight, intimidation, force, violence, physical interference or obstacle or by any other unlawful means." (Pl.'s Opp'n Br. 9.)

Trooper Defendants are correct that there was probable cause here. In Hernandez, the basis for the defendant's obstruction charge was as follows:

> Defendant stated . . . that the police "wouldn't let me go in my house" while arresting his brother and directed him to leave the area. Defendant acknowledged that he continued to curse at the police, did not leave the area, and did not follow the instructions from the police.

768 A.2d at 1066. In examining whether there was a factual basis for defendant's guilty plea, the court there found the above facts sufficed. Id.

This case is analogous. Plaintiff was escorted from the Hearing and instructed specifically by Trooper Defendants that he could not return. Plaintiff continued to assert it was his First Amendment right to be present in the Hearing. Then, he stated he was going to return to the Hearing and turned to go back in. While he did not curse as Hernandez did, his conduct was in clear violation of Trooper Defendants' orders. If that conduct was enough in Hernandez to serve as a factual basis for a guilty plea, it is enough here to show probable cause.

Accordingly, there was probable cause to arrest and detain Plaintiff on this charge. As long as probable cause exists as

to one charge, a false arrest and imprisonment charge must fail.

See, e.g., Boyd v. City of Jersey City, No. 15-26 (ES/MAH), 2018

U.S. Dist. LEXIS 99025, at *12 (D.N.J. June 13, 2018)

(dismissing false arrest and imprisonment claims because the

court found there was probable cause that the plaintiff had

committed obstruction under N.J. Stat. Ann. § 2C:29-1).  Thus,

the Court will grant Defendants' Motion for Summary Judgment in

this respect and will dismiss all of Plaintiff's Fourth

Amendment claims.

### c. Whether Defendants Violated Clearly Established Law

Even though this Court finds there were no constitutional

violations committed by any Defendant, the Court will also

examine the second prong of qualified immunity.  The Third

Circuit recently addressed the "clearly established" prong in

assessing qualified immunity.  See Sauers v. Borough of

Nesquehoning, 905 F.3d 711, 719 (3d Cir. 2018). In it, the Third

Circuit explained:

> A right is clearly established when the law is
> "sufficiently clear that every reasonable official would
> have understood that what he is doing violates that
> right." Reichle v. Howards, 566 U.S. 658, 664 (2012)
> (internal quotation marks, citation, and alteration
> omitted).  That does not require a prior precedent with
> indistinguishable facts, "but existing precedent must
> have placed the statutory or constitutional question
> beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741
> (2011).  Existing precedent is sufficient to place a
> constitutional question beyond debate and to defeat
> qualified immunity only if it is "controlling authority
> in [the relevant] jurisdiction," Wilson v. Layne, 526

U.S. 603, 617 (1999), or if "a 'robust consensus of cases
of persuasive authority' in the Court of Appeals" has
settled the question, <u>Mammaro v. N.J. Div. of Child Prot.
& Permanency</u>, 814 F.3d 164, 169 (3d Cir. 2016) (quoting
<u>Taylor v. Barkes</u>, 135 S. Ct. 2042, 2044 (2015)).

When qualified immunity is at issue, context matters.
The "inquiry 'must be undertaken in light of the specific
context of the case, not as a broad general
proposition.'" <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308
(U.S. 2015) (quoting <u>Brosseau v. Haugen</u>, 543 U.S. 194,
198 (2004) (per curiam)). When courts fail to take into
consideration the "particularized" facts of a case, they
permit plaintiffs "to convert the rule of qualified
immunity . . . into a rule of virtually unqualified
liability simply by alleging violation of extremely
abstract rights." <u>White v. Pauly</u>, 137 S. Ct. 548, 552
(U.S. 2017) (alteration in original) (quoting <u>Anderson
v. Creighton</u>, 483 U.S. 635, 639-40 (1987)).

<u>Sauers</u>, 905 F.3d at 719.

The Court will examine in turn, assuming there were

violations of the First and Fourth Amendment, whether the rights

were "clearly established."

### i. Whether the First Amendment Right was Clearly Established

Even though this Court finds that there has been no First

Amendment violation, the Court will consider whether that right

was clearly established. Defendants argue it was not clearly

established, stating the question as whether "an individual has

a constitutional right to disrupt a public hearing by refusing

to end his remarks and speaking over the hearing chairperson as

she attempts to restore order to the proceedings." (Defs.' Mot.

for Summ. J. 16.) Defendant argues there is no case law on-

point that placed the conduct in question beyond doubt.

28

Plaintiff counters it was clearly established, saying he had "the right to free speech before government and to petition government." (Pl.'s Opp'n Br. 11.)

First, the Court notes that Defendants are correct, there appears to be no Supreme Court precedent or robust consensus that the temporary removal of a disruptive individual by an officer may violate the First Amendment. In fact, the Third Circuit recently found in Barna that there was no robust consensus as to permanent removal of a disruptive individual. Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist., 877 F.3d 136, 142-44 (3d Cir. 2017). As discussed supra, the case law that has been presented to this Court suggests it is permissible to remove a disruptive individual from a governmental function. The Court finds here that Defendant has presented case law, based on the uncontested facts, that show the right at issue here was not clearly established. Plaintiff has not countered with Supreme Court precedent or a robust consensus of persuasive authority.

Moreover, while the Court recognizes that, in general, Plaintiff's statement is correct, it does not lead to the ineluctable conclusion that qualified immunity is improper here. Plaintiff's statement of his "clearly established" right is merely a general recitation of what is guaranteed by the First Amendment. What is required here is "'sufficient precedent at

the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited.'" Mammaro, 814 F.3d at 169 (quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001)).

The case cited by Plaintiff, Mirabella v. Villard, is neither factually analogous, nor did it find the right argued by Plaintiff qualified as "clearly established." 853 F.3d 641 (3d Cir. 2017). The Mirabella case involved emails between the "Chairperson of the Board of Supervisors" for Montgomery Township, Pennsylvania, the Montgomery Township Solicitor, and the plaintiffs where plaintiffs threatened suit and the Township threatened to pursue sanctions in the putative litigation. Id. at 646-47. Although in Mirabella there was both a First Amendment retaliation and free speech claim, that is where the similarities end. Id. at 648. Moreover, the Court only found one of the three theories of rights was "clearly established" at the time. Id. at 649, 653.

Accordingly, this Court finds that even if there was a constitutional violation in this case under the First Amendment or retaliation theories, the rights complained of were not clearly established. Thus, the First Amendment claims must be dismissed.

### ii. Whether the Fourth Amendment Right was Clearly Established

Even though this Court finds that there has been no Fourth Amendment violation, the Court will consider whether that right was clearly established. Trooper Defendants argue the question which must be answered by clearly established law "is whether there was clearly established law as of March 10, 2016 showing that an individual had a constitutional right to not be arrested for attempting to re-enter a public hearing, from which he had been ejected, after being warned he would be arrested if he continued." (Defs.' Mot. for Summ. J. 16.) Plaintiff counters that it is clearly established that a "police officer who arrests a person without probable cause may be liable in a civil rights suit for damages." (Pl.'s Opp'n Br. 11.) Plaintiff provides no further case law on-point.

Trooper Defendants have pointed to an absence of case law that could show the right at-issue here under similar circumstances. Plaintiff has failed to provide any Supreme Court case law or a robust consensus of the Courts of Appeals. As the Supreme Court has stated, "[t]he general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011). As state supra,

there must be "'sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited.'" <u>Mammaro</u>, 814 F.3d at 169 (quoting <u>McLaughlin</u>, 271 F.3d at 572).  Plaintiff has provided no factually similar cases from any court, much less the Supreme Court or Courts of Appeals, which would unravel the issue in this case.

Accordingly, this Court must dismiss the Fourth Amendment claims asserted because Plaintiff has failed to show the law was clearly established at the time of the incident.  Thus, this Court finds Defendants have satisfied both prongs of the qualified immunity analysis as to all claims and all claims, under § 1983 and the NJCRA, must be dismissed.

## CONCLUSION

Based on the foregoing analysis, this Court will grant Defendants' Motion for Summary Judgment and will dismiss this action in its entirety.

An appropriate Order will be entered.


Date: <u>June 26, 2019</u>         <u>s/ Noel L. Hillman</u>
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.